UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL G.,

                    Plaintiff,

    v.                                        6:24-cv-1256
                                            (DJS)

FRANK BISIGNANO, *Commissioner of*
*Social Security*,

                    Defendant.
_____

**APPEARANCES:**                                         **OF COUNSEL:**

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.        GEOFFREY M. PETERS, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM DECISION AND ORDER[1]

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 24-1, 26, & 27.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1976.  Dkt. No. 7, Admin. Tr. ("Tr.") at p. 292.  He has four or more years of college education.  Tr. at p. 297.  He has not worked since December 31, 2021.  Tr. at p. 296.  He has past work experience as an associate, a laborer, a produce clerk, a quality control inspector, and a customer service teammate.  Tr. at pp. 297-98.  Plaintiff alleges disability based on bipolar disorder, severe alcohol use disorder, and antisocial personality disorder.  Tr. at p. 296.

### B. Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits on August 16, 2022.  Tr. at p. 84.  He alleged a disability onset date of October 31, 2014.  *Id.*  Plaintiff's application was initially denied on December 20, 2022.  Tr. at p. 121.  Reconsideration was denied on August 17, 2023, Tr. at pp. 146-48 & 150-52, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 157-58.  Plaintiff appeared at a hearing before ALJ Kenneth Theurer on May

---

jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 6 & General Order 18.

1, 2024, at which Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified. Tr. at pp. 33-63. On May 13, 2024, the ALJ issued a written decision finding Plaintiff was not disabled. Tr. at pp. 17-26. On August 28, 2024, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2014, the alleged onset date. Tr. at p. 19. Second, the ALJ determined that Plaintiff had the following severe impairments: depressive disorder, bipolar disorder, anxiety disorder, and antisocial personality disorder. Tr. at p. 20. Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). *Id.* Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except that he:

> must avoid work at unprotected heights or in conjunction with dangerous machinery. [Plaintiff] is limited to carrying out simple instructions in a work environment involving only simple, work-related decisions with only occasional changes in the routine work setting. [Plaintiff]'s tasks should involve working with objects rather than people. He can interact with supervisors and coworkers on an occasional basis throughout the workday, but he should have no more than occasional, brief interaction with the public. [Plaintiff] should not be responsible for the work of others.

Tr. at p. 22. Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. at p. 25. Next, the ALJ found that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not the [Plaintiff] has transferable job skills." *Id.* The ALJ then determined that, based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 25-26. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at p. 26.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v.*

*Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§

404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff raises three claims of error for review in this proceeding.  First, Plaintiff argues that "[t]he decision is flawed because the ALJ, at step three in the sequential evaluation, found moderate limitations in concentrating, persisting or maintaining

6

pace," and the VE testified that, "if an individual could only frequently—up to two-thirds of the time—maintain attention and concentration for simple tasks, such a restriction would eliminate competitive employment," but Plaintiff claims that "the discrepancy was not explained." Dkt. No. 24-1, Pl's Mem. of Law at pp. 11-14. Second, Plaintiff asserts that the ALJ improperly evaluated the opinion of Marisol Valencia-Payne, Psy.D., and inadequately explained his consideration of the factors of supportability and consistency in his rationale for finding the moderate to marked mental restrictions which Dr. Valencia-Payne assessed to be unpersuasive. *Id.* at pp. 14-22. Third, Plaintiff claims that the ALJ improperly evaluated the opinion of Sharon Revan, M.D., and "failed to explain her omission of mild restrictions which Dr. Revan assessed, despite finding the opinion persuasive." *Id.* at pp. 22-23. Alternatively, Plaintiff requests that the Court remand the case for consideration of new and material evidence. *Id.* at pp. 23-24.

Defendant responds that: substantial evidence supports the mental RFC finding and the ALJ's evaluation of Dr. Valencia-Payne's opinion, Dkt. No. 26, Def.'s Mem. of Law at pp. 6-14; that substantial evidence supports the physical RFC finding and the ALJ's evaluation of Dr. Revan's opinion, *id.* at pp. 14-18; and that Plaintiff has identified no good cause for the late submission of the duplicative and non-material evidence appendices to the Court. *Id.* at pp. 18-22.

### A. Limitations in Concentrating, Persisting, or Maintaining Pace

Plaintiff first argues that the ALJ failed to explain a discrepancy between his finding of limitations at Step Three and the VE's subsequent testimony regarding potential employment. Pl's Mem. of Law at pp. 11-14. This argument is without merit.

A review of the ALJ's decision reveals that, while the ALJ found at Step Three that Plaintiff had a "moderate limitation" with regard to concentrating, persisting, or maintaining pace, and stated that Plaintiff "complained of concentration issues," his analysis did not end there. Tr. at p. 21. The ALJ described Plaintiff as being "organized" and "able to follow written instructions," and noted that Plaintiff has "logical" and "goal directed thought processes" and "normal psychomotor activity." *Id.* The ALJ also observed that, at Plaintiff's 2022 consultative examination, he had "coherent and goal directed thought processes, as well as intact attention and concentration," and Plaintiff's records from 2023 "describe appropriate thought content and normal psychomotor activity." *Id.*

The ALJ's findings regarding Plaintiff's mental limitations informed the restrictions that the ALJ set at Step Four regarding Plaintiff's RFC, namely that Plaintiff is limited to: "carrying out simple instructions in a work environment involving only simple, work-related decisions with only occasional changes in the routine work setting"; "working with objects rather than people"; and "interact[ing] with supervisors and coworkers on an occasional basis throughout the workday" with "no more than occasional, brief interaction with the public." Tr. at p. 22. The ALJ's determination of

Plaintiff's RFC is supported by substantial evidence in the record, which reveals that Plaintiff has intact cognitive abilities, including: logical, organized, linear, and goal-directed thought processes; normal psychomotor activity and psychological status; good and intact memory, insight, and judgment; good intellectual functioning; and normal attention.  Tr. at p. 23 (citing Tr. at pp. 1017, 1026, 1135-38, 1198, 1295, 1314, 1446, 1464, & 1546).

The determinations at Step Three and Step Four "require distinct analysis." *Richard B. v. Comm'r of Soc. Sec.*, 2021 WL 4316908, at *6 (W.D.N.Y. Sept. 23, 2021) (citation omitted).  While the analysis at Step Three "concerns the *functional effects* of mental impairments, the RFC analysis at [S]tep [F]our specifically considers *work-related* physical and mental activities in a *work setting*."  *Id.* (quotation omitted) (emphasis in original).  "As a result, a finding at [S]tep[] . . . [T]hree does not automatically translate to an identical finding at [S]tep [F]our," and thus a Step Three finding of a moderate limitation does not control at the Step Four RFC determination. *Id.* (quotation omitted).

For example, in *Pidgeon v. Comm'r of Soc. Sec.*, the plaintiff argued "that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination," but the court found that this argument "lack[ed] merit because the ALJ's findings at [S]tep 3 of the sequential analysis are not an RFC determination" and it is not "necessarily error for an

ALJ not to include findings made at Step 3 in the RFC." *Id.* (quoting *Pidgeon v. Comm'r of Soc. Sec.*, 2017 WL 4680412 (W.D.N.Y. Oct. 18, 2017)).

Plaintiff draws attention to the fact that the VE testified that, if a hypothetical individual could only frequently, meaning up to two-thirds of the time, maintain attention and concentration for simple tasks, then that would eliminate competitive employment. Pl's Mem. of Law at p. 12 (citing Tr. at p. 62). However, the VE also testified that, based on his experience, most employers would tolerate workers that are off task up to and including fifteen percent of the workday, Tr. at p. 61, and Plaintiff has not articulated anything in the record evidencing that Plaintiff's time off task would exceed those limits. *See Terrence S. B. v. Comm'r of Soc. Sec.*, 2024 WL 4131237, at *7 (W.D.N.Y. Sept. 10, 2024) ("[P]laintiff points to no evidence in the record that specifically states that he is unable to sustain concentration and persistence for periods of up to two hours, or that he is incapable of performing simple work."); *Brierley v. Saul*, 2020 WL 709609, at *5 (W.D.N.Y. Feb. 12, 2020) ("Plaintiff's contention that the ALJ used the term 'moderate limitation' to mean a limitation that would render the claimant unable to perform that function up to one-third of the day is speculative and contrary to the ALJ's decision."); *see also Rodriguez v. Comm'r of Soc. Sec.*, 2021 WL 1335907, at *4 (S.D.N.Y. Apr. 9, 2021) (holding that "there was sufficient evidence in the record to show that the plaintiff's moderate limitations in concentrating, persisting, or maintaining pace do not preclude her from simple, routin[e] tasks"). "Plaintiff's argument on this point suggests that any claimant with a 'moderate' limitation in

concentration, persistence or pace is necessarily disabled, which is contrary to the law of this Circuit." *Brierley v. Saul*, 2020 WL 709609, at *5 (citations omitted). Notably, the ME testified that he did not foresee any problems with Plaintiff's ability to sustain a routine and schedule within the restrictions that he mentioned, which were adopted by the ALJ in determining Plaintiff's RFC. Tr. at pp. 42-44.

Accordingly, the ALJ's analysis is supported by substantial evidence and not a basis for remand.

### B. Opinion of Marisol Valencia-Payne, Psy.D.

Plaintiff next argues that the ALJ improperly evaluated the opinion of Marisol Valencia-Payne, Psy.D., and inadequately explained his consideration of the factors of supportability and consistency in his rationale for finding the moderate to marked mental restrictions which Dr. Valencia-Payne assessed to be unpersuasive. Pl's Mem. of Law at pp. 14-22. The Court disagrees.

The ALJ stated that Dr. Valencia-Payne found "moderate-to-marked limitations regarding interacting with others, using reasoning and judgment to make work-related decisions, sustaining an ordinary routine and regular attendance, regulating emotions, controlling behavior and maintaining well-being." Tr. at p. 24. In concluding that this opinion was "somewhat persuasive," the ALJ sufficiently explained the supportability factor by noting that Dr. Valencia-Payne's opinion "was based on an examination of the [Plaintiff] that found a flat affect, fair social skills, fair judgment and intact attention, concentration and memory." *Id.* Though concise, the ALJ's analysis of the

supportability factor was sufficient because the ALJ explicitly stated that the opinion was based on an examination of the Plaintiff. *See Robert S. v. Comm'r of Soc. Sec.*, 2024 WL 4442740, at *3 (N.D.N.Y. Aug. 15, 2024), *report and recommendation adopted sub nom. Robert S. v. O'Malley*, 2024 WL 4262551 (N.D.N.Y. Sept. 23, 2024) (citing cases).

Plaintiff acknowledges that "[t]he ALJ discusse[d] the factor of consistency." Pl's Mem. of Law at p. 17. When the ALJ determined that Dr. Valencia-Payne's opinion was not more persuasive, he sufficiently addressed the consistency factor by noting that Dr. Valencia-Payne's opinion was "only partially supported by the record." Tr. at p. 24. The ALJ explained that "most other clinical findings in the record are normal or nearly normal," including other records from 2022 that described Plaintiff as having "a pleasant demeanor, average eye contact, an appropriate affect, logical thought processes and cooperative behavior" and records from late 2022 that described Plaintiff as having "good insight, good judgment and good memory." *Id.*

Accordingly, the ALJ properly evaluated the opinion of Dr. Valencia-Payne and adequately explained his consideration of the supportability and consistency factors in his rationale.

### C. Opinion of Sharon Revan, M.D.

Finally, Plaintiff argues that the ALJ improperly evaluated the opinion of Sharon Revan, M.D., and "failed to explain her omission of mild restrictions which Dr. Revan assessed, despite finding the opinion persuasive." Pl's Mem. of Law at pp. 22-23. More

12

specifically, Plaintiff claims that the ALJ's analysis is flawed because the ALJ found Dr. Revan's opinion persuasive without suggesting that he intended to reject the mild limitations in standing that Dr. Revan assessed, and complains that the ALJ did not include any physical restrictions in determining Plaintiff's RFC.  *Id.*  Plaintiff's claims of error are not a basis for remand.

As a preliminary matter, an ALJ is not required to adopt every limitation contained in a medical opinion where the ALJ finds the opinion overall to be persuasive. *Edward J. v. Kijakazi*, 2022 WL 4536257, at *5 (N.D.N.Y. Sept. 28, 2022) (citing cases).  As such, Plaintiff's argument that the ALJ erred by finding Dr. Revan's opinion persuasive without suggesting that he intended to reject the mild limitations in standing that Dr. Revan assessed is contrary to law.

While the record indicates that Plaintiff may have suffered an injury to his back and/or hip while at work in November of 2021 when he slipped and fell down two stairs, Tr. at pp. 109, 1169-70, & 1277, the ALJ found Dr. Revan's opinion that Plaintiff had "no more than mild limitations regarding physical issues" persuasive.  Tr. at p. 25.  The ALJ explained that Dr. Revan's opinion was "consistent with the record, as the [Plaintiff] did not provide any objective evidence of a severe physical impairment." *Id.* Further, the ALJ noted that Plaintiff "did not allege any physical issues on his Adult Disability Report, nor is there evidence of any in the record." *Id.*

The ALJ's findings regarding the lack of severity of Plaintiff's alleged physical impairments are supported by substantial evidence.  When applying for disability,

Plaintiff only alleged disability based on mental impairments, including bipolar disorder, severe alcohol use disorder, and antisocial personality disorder; Plaintiff did not allege disability based on any physical impairments. Tr. at p. 296. Plaintiff also stated in his application that he had not seen a health professional and did not have a future appointment scheduled with a health professional for any physical conditions. Tr. at p. 299. Moreover, during Plaintiff's hearing before the ALJ in May 2024, Plaintiff testified that his only impairments were mental. Tr. at pp. 50-51.

The record also reveals that, while Plaintiff complained of "past hip pain" to Dr. Revan, based on Dr. Revan's physical examination of Plaintiff in December of 2022, Dr. Revan determined that Plaintiff had "no acute distress with normal gait and stance with no assistive devices," "full [range of motion] of the hips bilaterally," and 5/5 strength in the lower extremities. Tr. at pp. 72 & 1282-84. Consequently, Dr. Revan properly concluded that Plaintiff's "alleged physical impairments" were "non-severe." Tr. at p. 72. This finding is consistent with other records from 2020, 2021, 2022, and 2023, which state that Plaintiff's back had no deformity, range of motion was normal, and there was no tenderness. Tr. at pp. 1444-46, 1448-59, & 1528-30.

Regardless, the existence of a non-severe or mild physical limitation does not require the ALJ to impose some physical limitation in Plaintiff's RFC. *See Tricia W. v. Comm'r of Soc. Sec.*, 2023 WL 4471661, at *3 (N.D.N.Y. June 8, 2023), *report and recommendation adopted*, 2023 WL 4471792 (N.D.N.Y. July 11, 2023) (citation omitted) ("Finding a mild limitation, therefore, did not require the ALJ to impose some

mental limitation in the RFC."). After all, "by definition, an impairment which is not severe 'does not significantly limit [the Plaintiff's] physical or mental ability to do basic work activities.'" *DuBois v. Comm'r of Soc. Sec.*, 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022) (quoting 20 C.F.R. § 404.1522(a)). That the ALJ did not include physical exertional limitations in Plaintiff's RFC is, therefore, "a function of the scarcity of evidence supporting such limitations, not a failure of the ALJ to consider them." *Christopher L. v. Comm'r of Soc. Sec.*, 2022 WL 682649, at *5 (W.D.N.Y. Mar. 8, 2022) (citation omitted).

Accordingly, Plaintiff has not pointed to an error in the ALJ's evaluation of the opinion of Dr. Revan and/or in the ALJ's determination of Plaintiff's functional residual capacity warranting remand.

### D. Request for Sentence Six Remand

Alternatively, Plaintiff argues that the Court should remand the case for consideration of new and material evidence. Pl's Mem. of Law at pp. 23-24. Attached to Plaintiff's moving papers are treatment notes from the New York State Office of Mental Health - Mohawk Valley Psychiatric Center dating from 2017 through 2022 that Plaintiff claims were not admitted into evidence before the ALJ. *See id.* at p. 24. "Plaintiff asserts that good cause exists for failure to submit these records at the hearing level" because "[t]he record before the ALJ contains a request for the records dated June 29, 2023, which indicates that the agency's letter attempting to obtain these records was returned undeliverable." *Id.* Additionally, Plaintiff provides descriptions of the

15

documents in an attempt to explain their significance. *Id.* In response, Defendant argues that this "late-submitted evidence submitted only here and never to the agency" should be rejected as lacking good cause, duplicative, and not material, and notes that "Plaintiff's representative at the administrative level confirmed that the record was complete." Def.'s Mem. of Law at pp. 18-20.

Sentence six of 42 U.S.C. 405(g) provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. 405(g). Given that the request for remand is being made by Plaintiff rather than the Commissioner of Social Security, there must be "a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

Plaintiff has failed to make either of these necessary showings. While Plaintiff noted that the Commissioner's request for certain records from Central NY Services

Milestones was returned as undelivered, Pl's Mem. of Law at p. 24 (citing Tr. at 1341); Def.'s Mem. of Law at p. 19, Plaintiff did not explain how that demonstrates good cause for the late submission of records from Mohawk Valley Psychiatric Center. Regardless, even assuming, *arguendo*, that Plaintiff could show good cause for the failure to incorporate this evidence into the administrative record presented to the ALJ, the documents are nonetheless not material.

To be material, the evidence must be "relevant to the time period for which benefits were denied" and there must be "a reasonable possibility that the evidence would have affected the outcome of the claimant's application." *Michael C. v. Comm'r of Soc. Sec.*, 2025 WL 1891855, at *6 (W.D.N.Y. July 9, 2025) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (1988)). Here, Plaintiff claims that the subject documents evidence that Plaintiff was diagnosed with "bipolar I disorder, current or most recent episode manic, severe." Pl's Mem. of Law at p. 24. This diagnosis does not, however, "move the mark" because, even if the ALJ did not review this record in making his determination, the ALJ nonetheless concluded that one of Plaintiff's severe impairments was bipolar disorder. Tr. at p. 20.

Plaintiff also asserts that the documents demonstrate "clear evidence of grandiosity," and that Plaintiff was "assessed to be both a danger to himself and others." Pl's Mem. of Law at p. 24. However, again, this evidence would be unlikely to change the outcome of the ALJ's decision because, as Plaintiff himself acknowledges in his moving papers, there was already evidence in the record presented to the ALJ of

17

grandiosity. *Id.* at pp. 11 & 17-18 (citing Tr. at p. 1278); *see also* Tr. at p. 1129 (noting that, in September 2017, Plaintiff had "clear evidence of grandiosity").  Additionally, there is some evidence in the record presented to the ALJ that the Plaintiff presented a danger and threat to himself and possibly others.  *See, e.g.*, Tr. at pp. 853, 990, 1131.  Nevertheless, there was also substantial evidence in the record that Plaintiff was not suicidal or homicidal, and did not express suicidal or homicidal thoughts, ideations, intentions, or plans.  *See, e.g.*, Tr. at pp. 446, 498, 584, 1246, 1253, 1256, 1263, 1295, 1304, 1309, 1314, 1318, 1330, 1344.

Accordingly, Plaintiff's request that the case be remanded, pursuant to sentence six of 42 U.S.C. 405(g), for consideration of allegedly new and material evidence is denied.

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-

Decision and Order on the parties.

Dated: January 30, 2026
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge